## Commissioners of Highways Town of Harrison v. Truman Sweet.

1. SURFACE WATERS—*Commissioners of Highways Can Not Change the Course of.*—The commissioners of highways can not, by building a bridge across the highway, change the natural flow of surface water, so as to cast upon adjacent lands water which would not have come upon such premises in a state of nature, but which would have passed in another direction over the lands of others, and reached the highway at a bridge already in the road.

2. EQUITY PRACTICE—*Pleading and Proofs Must Correspond.*—The rule that a party can not make one case by his pleadings and a different one by his proofs, is applicable to a defendant as well as to a complainant. The defendant is bound to apprise the complainant by his answer of the nature of the defense he intends to set up, and can not avail himself of any matter not stated in his answer even though it appears in evidence.

3. COMMISSIONERS OF HIGHWAYS—*Can Not Plead Prescriptive Rights Existing in Adjacent Land Owners.*—In a suit against the commissioners of highways for changing the flow of surface waters, the commissioners can not plead prescriptive rights as to the flow of the water existing in

the owners of the adjacent land, who are neither parties to the suit nor asking any relief in the premises.

4. SAME—*Can Not Carry on a Litigation for the Benefit of Strangers.*—The highway commissioners have no right to injure one land owner for the purpose of benefiting another. They should not take it upon themselves to determine questions as to the flow of water, nor to initiate changes in the course of its flow, or carry on litigation for the benefit of adjacent land owners.

**Bill for an Injunction.**—Trial in the Circuit Court of Winnebago County; the Hon. JOHN C. GARVER, Judge, presiding. Hearing and decree for complainant. Appeal by defendant. Heard in this court at the May term, 1898. Affirmed. Opinion filed September 26, 1898.

ARTHUR H. FROST and ROBERT G. McEVOY, attorneys for appellants.

The manner of improving highways is left principally to the wise discretion of the commissioners of highways, and in the exercise of the duties imposed upon them by law they can not be interfered with unless they invade some private rights of citizens. Young v. Commissioners of Highways, 134 Ill. 569; Commissioners of Highways, etc., v. Whitsitt, 15 Ill. App. 318.

The owner of the dominant heritage, or higher tract of land, has the right to have the surface water falling or coming naturally upon his premises pass off through the natural drains upon and over the lower or servient lands. And the owner of the dominant heritage may, by ditches or drains, drain his own land into the natural and usual channel, even if the quantity of water thrown upon the servient heritage is thereby increased. Young v. Commissioners of Highways, 134 Ill. 569; Peck v. Herrington, 109 Ill. 611; Commissioners of Highways v. Whitsitt, 15 Ill. App. 318; Anderson v. Henderson, 124 Ill. 164.

The same rules are to be applied to road drainage as to farm drainage. Commissioners of Highways, etc., v. Whitsitt, 15 Ill. App. 323; Commissioners of Highways, etc., v. Young, 34 Ill. App. 178–185; Commissioners of Highways, etc., v. Young, 134 Ill. 569; Peck v. Herrington, 109 Ill. 611; Drainage Laws of 1885, Sec. 4; Hurd's Stat. 1897, Chap. 42, Sec. 78, p. 664.

The owner of a servient heritage has no right, by embankments or other artificial means, to stop the natural flow of the surface water from the dominant heritage, and thus throw it back upon the latter.   Gormley v. Sanford, 52 Ill. 158.

Where the natural course and outlet for water on the land of one owner is over the land of another, such course can not be obstructed.   Patneaud v. Claire, 32 Ill. App. 554–557; Crohen v. Ewers, 39 Ill. App. 34–42.

It may be stated as a general principle that by the civil law, where the situation of two adjoining fields is such that the water falling or collected, by melting snow and the like, upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land, if desired by the owner of the upper field.   Washburn on Easements and Servitudes, pages 353–355.

Because water is descendible by nature, the owner of a dominant or superior heritage has an easement in the servient or inferior tenement for the discharge of all waters which by nature, rise in or flow or fall upon the superior. Kauffman v. Griesemer, 26 Penn. St. 407.

If the water cast upon Sweet's premises at the point proposed will flow in a natural channel, he is bound to receive the same although the flow may be somewhat increased. Peck v. Herrington, 109 Ill. 611; Young v. Commissioners, 134 Ill. 569; Guesnard v. Bird, 33 La. Ann. 797; Martin v. Riddle, 26 Pa. St. 415; Meixell v. Morgan, 149 Pa. St. 415; Hoester v. Hemsath, 16 Mo. App. 485; Burk v. Mo. Pas. Ry. Co., 29 Mo. App. 370; Sowers v. Shiff, 15 La. Ann. 300.

The lower proprietor can not obstruct the natural flow of the water.   Hughes v. Anderson, 68 Ala. 280 (44 Am. Rep. 147); Nininger v. Norwood, 72 Ala. 277 (47 Am. Rep. 412); Farris v. Dudley, 78 Ala. 124 (56 Am. Rep. 24;) Ogburn v. Connor, 46 Cal. 346; McDaniel v. Cummings, 83 Cal. 515; Gillham v. Mad. Ry. Co., 49 Ill. 484; Totel v. Bonefoy, 123 Ill. 653; Adams v. Walker, 34 Conn. 466; Kauffman v. Griesemer, 26 Pa. St. 407; Butler

v. Peck, 16 Ohio St. 334; Tootle v. Clifton, 22 Ohio St. 247; Sweet v. Cuts, 50 N. H. 439; Wood on Nuisances (2d Ed.), Sec. 454; Angell on Watercourses, Sec. 333.

The general principles of law on the matter of rainwater and drainage, and of the respective rights and duties of adjoining proprietors in relation thereto, are in general the same as in the case of running water—they follow nature. Martin v. Riddle, 26 Pa. St. 415; Boynton v. Longley, 19 Nevada, 72.

WORKS & HYER, attorneys for appellee, contended that a watercourse, as applied to a right to drain into it, is such a conformation of the land as to give the surface water flowing from one tract to the other a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point; the course thus uniformly followed by the water in its flow is a watercourse within the rule, but such course can only exist where there is a ravine, swale or depression of greater or less depth and extending from one tract to another, and so situated as to gather the surface water falling upon the dominant tract and to conduct it along a defined course to a definite point of discharge upon the servient tract. Lambert et al. v. Alcorn, 144 Ill. 313.

The defendant commissioners have no right under the law to cause the water accumulated upon the land on the west side of the highway, whether coming through the ditch between Grattan and Bodine, or otherwise, to flow through the highway as proposed, upon the land of appellee, there being at the point in question no natural watercourse within the rule. Peck et al. v. Herrington, 109 Ill. 611; Gillham v. Madison R. R. Co., 49 Ill. 487; Dayton v. Drainage Com'rs, 128 Ill. 276; Graham et al., Com'rs, etc., v. Keene, 34 Ill. App. 88.

Specially is this true in the light of the fact that the ditch between Grattan and Bodine was cut through a natural barrier and conducted water which otherwise would not flow to the point of the proposed cut. Dayton v.

Drainage Com'rs, 128 Ill. 276; Anderson v. Henderson, 124 Ill. 164; Graham et al. v. Keene, 143 Ill. 425.

Appellants have no right to let the water through the highway at this one point, discharging it upon appellee's land in a stream, so changing the manner of its coming upon his land, even though the land on the other side of the highway may slope toward him somewhat.   American & Eng. Ency. of Law, Vol. 24, p. 928, and cases there cited; Wagner v. Chaney et al., 19 Ill. App. 546; Mellor v. Pilgrim, 3 Ill. App. 476; Town of Brown v. Barrett, 38 Ill. App. 249; Stoddard et al. v. Filgur, 21 Ill. App. 563.

Where the pleadings and proof fail to show that a proposed change in the highway is necessary for improving or repairing the same, a decree enjoining the prosecution of such work should not be disturbed.   Graham et al. v. Keene, 143 Ill. 430; Anderson v. Henderson, 25 Ill. App. 79.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee owns the southeast quarter of the northeast quarter of section 7 in the town of Harrison in Winnebago county, and a tract of twenty-four acres next south thereof. John Dolan owns land north of appellee. The heirs of Catherine Grattan, deceased, own lands west of Dolan, and own the southwest quarter of the northeast quarter of said section 7.   William Bodine owns a twenty-acre tract south of the Grattan lands.   The Grattan and Bodine tracts are therefore next west of the two tracts owned by appellee. Between the lands of appellee and Dolan on the one side, and of Grattan and Bodine on the other, is a north and south highway.   About three-eighths of a mile north of appellee's land Otter Creek flows in a general easterly direction and crosses the highway, and there is a bridge in the highway at that place.   About half a mile directly west from the southern part of appellee's land is a lake or pond, the natural and ordinary outlet of which is due north into Otter Creek.   In times of high water, the pond also overflows in a northerly and easterly direction.   Several natural

draws or depressions cross the highway south of the creek and carry off these waters. There is one bridge across such a draw opposite the south part of Dolan's land, and three bridges cross three such draws opposite the north part of appellee's land. Some forty years before this suit was begun the then owner of the Grattan and Bodine lands dug a ditch east and west on the north line of Bodine's present land, extending back from said highway eighty rods. Said ditch was dug to carry a part of said overflow off the lands here called the Grattan and Bodine lands, and to carry it to the highway. The highway authorities at that time built a sluiceway across the highway at that point to let said waters across the road. At or about that time a ditch was dug in the highway, on the east side thereof, which received said waters to a greater or less extent, and conveyed them north to the draws before mentioned. At some time, variously estimated by the witnesses at from seventeen to thirty years before this suit was brought, the highway authorities closed said ditch on the east side of the highway, took out said sluiceway at the east end of said Grattan and Bodine ditch, turnpiked said road, and dug a deep ditch on the west side of said turnpike, which received the waters from said Grattan and Bodine ditch and conducted them north to said draws and bridges.

In the spring of 1897 the highway commissioners of said town decided to cut through the turnpike at a point 135 feet north of the place where said old sluiceway had formerly been, and 315 feet south of the most southern of the existing bridges, and to put in a bridge across the turnpike at that point, and thus to provide a way across the highway for the water coming from the west and from the Grattan and Bodine ditch, and to discharge said water upon appellee's land at that point. Thereupon appellee began this suit by filing a bill to enjoin the commissioners from cutting through said turnpike and putting in said bridge at that point. He set out the facts as to the location and ownership of the land, the waters and their natural outlets, the bridges already in existence, the Grattan and Bodine ditch,

and the highway ditches; and he charged that to open said turnpike and put in said bridge would take said waters out of their natural course and cast them upon his lands to the east of said proposed bridge, and irreparably injure them. A preliminary injunction was granted and the commissioners answered. Proofs were heard and there was a decree making said injunction perpetual. From that decree the commissioners now appeal.

The commissioners, in their answer, do not claim that the proper care of the highway requires the new bridge to be put in and the proposed cut to be made through the turnpike. They do not set up in their answer that the highway, in its present condition and with its present bridges, is in any respect defective or out of repair. They do not seek to justify their proposed action on the ground that it will in any respect improve the highway. They do not suggest in their answer that they are acting for the public good. Neither in their answer nor their proofs do they deny that complainant's lands will be injured by their proposed course, and they do not offer to restore the ditch on the east side of the highway, which was some protection to the land on that side of the road when said former sluice-way was in existence at the end of the Grattan and Bodine ditch. The answer does assert the right of the commissioners to open the turnpike and build the new bridge regardless of its effect upon appellee's land, and it places that claim of right upon two grounds.

The answer is first and chiefly devoted to the claim that the Grattan and Bodine ditch was lawfully dug by the man who then owned said lands west of the road, and that it and the sluiceway across the highway at the end thereof, were constructed with the approval of the man who then owned the land east of the road, appellee's grantor; that the highway commissioners ought not to have taken out said sluiceway, and that to do so was a wrong against the owners of the Grattan and Bodine lands; and the highway commissioners here set up and plead the rights which they claim exist in the owners of said lands west of the highway, by reason of what occurred forty years before between the

adjacent land owners. The Grattan heirs and Bodine are not before the court. They have not asked any relief against appellee. We are of the opinion the highway commissioners have no right to injure appellee merely for the purpose of ·benefiting Bodine and the Grattans. If the Grattans and Bodine have any contract rights, or any equities against appellee, because of. what occurred between their respective grantors when the Grattan and Bodine ditch was dug, that is a matter for the interested parties to litigate if they desire; but we think the highway commissioners should not take it upon themselves to determine those questions, nor to initiate this change in the course of the water and carry on litigation for the benefit of Bodine and the Grattans.

The answer secondly claims that the natural flow of the water from the west is across the highway ,at about the point of the proposed bridge, and therefore the commissioners may build a bridge there if they choose. We think the preponderance of the evidence is that the water from the lake or pond in question would never reach the place where the commissioners planned to put in the new bridge but for the Grattan and Bodine ditch, which ditch, we think the evidence shows, was cut through a rise of ground which would have prevented the waters from the pond coming in a state of nature to the point where it was proposed to locate the new bridge. The result of building said bridge will be to cast upon appellee's land, water which would not have come upon that part of his farm in a state of nature, but which would have passed northeasterly over the lands of Bodine and the Grattans, and reached the highway at one of the bridges already in the road. The commissioners have no right to do this, and injunction is a proper remedy to prevent the wrong. Grattan v. Keene, 143 Ill. 425. It is argued that to carry this water to the old bridges through the ditch on the west side of the highway is to discharge ·it where they have no right to carry it. We think the proof shows that is the place the overflow would have reached the highway if the Grattan and Bodine ditch had not been dug, and it is the point to

which the highway commissioners have carried it for not less than seventeen and, perhaps, thirty years; and when it crosses the highway at that point it discharges upon the lands of appellee and not upon the lands of some stranger, but at the point where said overflowing waters crossed his land in a state of nature, and where, therefore, he is bound to receive them.

Some attempt was made by defendants to prove that the condition of the highway was such that this bridge was needed, or that to put in the new bridge would benefit the highway. The rule that a party can not make one case by his pleadings and a different case by his proofs, is applicable to a defendant as well as to a complainant. The defendant is bound to apprise the complainant, by his answer, of the nature of the case he intends to set up, and can not avail himself of any matter of defense not stated in his answer, even though it appears in evidence. Johnson v. Johnson, 114 Ill. 611. By filing an answer the defendant submits to the court the case made by the pleadings. Kauffman v. Wiener, 169 Ill. 596; Holmes v. Dole, Clarke's Ch. 71. As the answer in this case does not assert any public necessity for the proposed bridge, nor that the highway will be improved thereby, complainant was not required to meet that defense, and defendants can not ask a decree in their favor because of any evidence which they introduced on that subject. But the proof shows the commissioners have permitted the ditch on the west side of the road to become filled and clogged up to some considerable extent, and have let willows grow in it, and corn stalks, straw, hay and stubble to accumulate against the willows, to the serious obstruction of the flow of the water, and have let long grass grow under the present bridges. We conclude from the evidence that if the highway commissioners will remove the obstructions in that ditch and under the existing bridges, the proposed new bridge will not be required for the benefit of the highway. We think the answer shows this was not the reason why they planned to cut the turnpike and put in the bridge.

For the reasons stated, the decree of the court below will be affirmed.